UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARASCO & NESSELBUSH, LLP,
    Plaintiff,

v.

TARA COLLINS, in her official capacity
as Supervisory Attorney of ODAR;
CAROLYN TEDINO, in her official
capacity as Regional Management Officer
for Boston Social Security Administration;
SOCIAL SECURITY ADMINISTRATION,
by and through NANCY BERRYHILL, in
her official capacity as Acting
Commissioner of the Social Security
Administration; and JANE DOE, in her
official capacity as an employee of the
Social Security Administration,
    Defendants.

C.A. No. 17-317-JJM-LDA

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Marasco & Nesselbush, LLP ("M&N") has sued the Social Security Administration ("SSA") and employees Tara Collins, Carolyn Tedino, and Jane Doe, alleging that the Defendants have unlawfully discriminated and retaliated against M&N through their arbitrary and irrational conduct regarding the payment of attorney's fees in Social Security disability cases. Defendants now move to dismiss. ECF No. 21. For the following reasons, the motion is GRANTED IN PART and DENIED IN PART.

I.  BACKGROUND

The facts in this case are largely undisputed; nevertheless, the Court briefly summarizes the relevant facts in the light most favorable to M&N.

SSA has total regulatory control over attorney's fees in Social Security disability cases. With this power, SSA has refused to recognize law firms when paying attorney's fees: SSA makes those payments only to individual attorneys, not firms. In any event, attorneys can only collect fees if SSA approves of the fee, and unauthorized fee collection can lead to criminal prosecution and the revocation of the right to practice before SSA.

M&N is a Rhode Island law firm[1] practicing Social Security disability law. M&N employs salaried associate attorneys. Those associates have no right to the attorney's fees that SSA pays them, and their salaries do not depend on the amount of fees generated by the disability cases they handle. To effectuate this, M&N associates sign Limited Powers of Attorney that acknowledge the attorney's fees are M&N's property.

M&N alleges that many of SSA's practices are arbitrary, capricious, and unconstitutional. For example, while SSA does not recognize law firms for paying attorney's fees, it does recognize law firms for tax purposes. That is, while SSA makes the actual payments to the individual attorneys, it credits the fees to M&N for tax

---

[1] M&N is a limited liability partnership. The Rhode Island Supreme Court allows entities such as M&N to practice law in Rhode Island. *See* R.I. Sup. Ct. R. 10.

reporting. At the same time SSA insists the attorney's fees are the associate's property, then, it acknowledges M&N owns the fees for tax purposes.

To further complicate matters, while SSA will not pay firms for work performed at the agency level, it does authorize payment to firms for work performed on Social Security disability cases if they reach federal courts. Indeed, M&N alleges that it has received such payments in its own name.

The effect of these rules causes M&N to maintain separate bank accounts in the individual name of every associate who works on disability cases for the firm. SSA will only deposit attorney's fees into these accounts, and M&N then must transfer the money into its own operating or escrow accounts. This is an imperfect solution, however; if an associate leaves M&N and withdraws the Limited Power of Attorney, M&N cannot transfer the fees from that associate's account under the threat of criminal prosecution. The result is that the fees are left in limbo, stuck in the joint account.

Another arbitrary rule M&N challenges is SSA's division of fees under the expedited fee agreement process. In that process, SSA divides the attorney's fee by the number of attorneys who have worked on a case and submitted forms to SSA. SSA divides the fee evenly, no matter how much or how little work the attorneys performed on the case. This process also requires M&N to maintain updated fee agreements with its clients every time an attorney leaves or joins the firm, so that the fee agreements reflect all attorneys who may work on a case.

Additionally, when attorneys move between law firms, SSA will only withhold attorney's fees for the newer attorney; it does not withhold any fees for the attorney in the prior firm even if SSA authorizes a fee award to that attorney. Due to the lengthy time to disposition common in Social Security cases, firms must keep track of their associates long after they have departed so that they can arrange for M&N to collect the fee.

When associates depart private practice with a law firm to work for SSA, however, SSA will not authorize any fees for the associate's prior work, even if the associate completed most or all of the work while she was still at the firm. SSA's position is that fee collection is "work," notwithstanding that it will not permit an attorney to even submit a fee petition until all work is completed on a case, and notwithstanding that SSA prohibits attorneys from applying for attorney's fees for the time claimed for preparing a fee petition or for any other activities related to charging or collecting a fee.

M&N alleges that it faced this last circumstance when three of its associate attorneys—former Defendants Joseph Wilson, Paul Dorsey, and Kyle Posey—left to work for SSA. The agency refused to pay M&N for work performed by these individuals. Yet, M&N alleges, SSA has paid attorney's fees to other Rhode Island law firms under the same circumstances. M&N alleges that these other firms never experienced difficulty getting paid for the cases handled by their associate attorneys who left for government service and that these firms continued to receive

authorization and payments for Social Security disability cases that were in the individual names of the associates after beginning their government work.

The Defendants now move to dismiss the Amended Complaint (ECF No. 21), which M&N opposes (ECF No. 24).[2] Following briefing on the motion to dismiss, the parties stipulated to the dismissal of Defendants Dorsey, Wilson, and Posey, as well as to Defendants Collins and Tedino in their individual capacities. ECF Nos. 27–31; Text Order, Apr. 26, 2018.

## II. STANDARD OF REVIEW

Federal Rule of Procedure 12(b)(1) tests the Court's subject matter jurisdiction. As a court of limited jurisdiction, this Court may not—absent subject matter jurisdiction—proceed with an action. *Belsito Commc'ns, Inc. v. Decker*, 845 F.3d 13, 21 (1st Cir. 2016). The party invoking jurisdiction bears the burden of establishing the jurisdictional requirements. *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, 834 F.3d 110, 116 (1st Cir. 2016).

Federal Rule of Civil Procedure 12(b)(6) tests the plausibility of the claims presented in a plaintiff's complaint. "To avoid dismissal, a complaint must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *García-Catalán v. United States*, 734 F.3d 100, 102 (1st Cir. 2013) (quoting Fed. R. Civ. P. 8(a)(2)). At this stage, "the plaintiff need not demonstrate that she is likely to

---

[2] The Court also received a brief from amici curiae American Civil Liberties Union of Rhode Island, Rhode Island Center for Justice, Rhode Island Disability Law Center, Rhode Island Association for Justice, Rhode Island Bar Association, and attorneys Andrew Horwitz, Peter Margulies, Lauren Jones, and John Tarantino. *See* ECF No. 25. The Court appreciates their input.

prevail, but her claim must suggest 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* at 102–03 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"The plausibility inquiry necessitates a two-step pavane." *García-Catalán*, 734 F.3d at 103. "First, the court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *Id.* (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)). "In determining whether a complaint crosses the plausibility threshold, 'the reviewing court [must] draw on its judicial experience and common sense.'" *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## III. DISCUSSION

Nine Counts remain in M&N's First Amended Complaint; Defendants seek dismissal of each.[3] The Court addresses them in turn.

### A. Counts I through III: *Bivens* claims

Counts I, II, and III are *Bivens* claims, each brought against Defendants Collins, Tedino, and Jane Doe, in their individual capacities, for alleged violations of

---

[3] The stipulated dismissals of Defendants Dorsey, Wilson, and Posey fully extinguished Count X. ECF Nos. 28–30; Text Order, Apr. 26, 2018.

procedural due process, substantive due process, and equal protection, respectively. After briefing this motion, the parties stipulated to the dismissal of all claims against Ms. Collins and Ms. Tedino in their individual capacities. ECF Nos. 27, 31; Text Order, Apr. 26, 2018. M&N further does not oppose dismissal of these Counts as to Jane Doe. ECF No. 24 at 8–9. The Court thus GRANTS the motion as to Jane Doe in her individual capacity, which completes the dismissal of Counts I, II, and III.

B. Count IV: Mandamus

Count IV seeks a writ of mandamus requiring SSA to release disputed fees to M&N and authorize to M&N payment of fees for work performed by former Defendants Wilson, Dorsey, and Posey. The Defendants argue that the Court must dismiss this Count because sovereign immunity bars the claim.

Any fees to which M&N may be entitled are authorized by 42 U.S.C. § 406(a). But that section did not waive sovereign immunity. *See Binder & Binder, P.C. v. Colvin*, 818 F.3d 66, 70 (2d Cir. 2016); *In re Handel*, 570 F.3d 140, 145 (3d Cir. 2009); *Pittman v. Sullivan*, 911 F.2d 42, 46 (8th Cir. 1990). Nor is the federal mandamus statute itself an exception to the doctrine of sovereign immunity. *Coggeshall Dev. Corp. v. Diamond*, 884 F.2d 1, 3 (1st Cir. 1989).

Accordingly, the Court finds that sovereign immunity bars a claim for mandamus, and GRANTS the motion to dismiss as to Count IV.

C. Counts V through VII: Constitutional claims

Counts V, VI, and VII each seek a declaratory judgment that Defendants Collins, Tedino, Berryhill, and Jane Doe, in their official capacities, violated the

7

Constitution. Because these are colorable constitutional claims, SSA's defense of sovereign immunity does not apply. *See Califano v. Sanders*, 430 U.S. 99, 109 (1977).

    1.    Count V: Procedural Due Process

Count V alleges that Defendants failed to provide "any mechanism for Plaintiff M&N to challenge Defendants' refusal to pay attorney's fees to Plaintiff," and that SSA lacked "a procedure for M&N to establish that the attorney's fees belong to Plaintiff and not Defendants." ECF No. 24 at 24.

To state a procedural due process claim, a plaintiff must demonstrate "[1] 'a property interest as defined by state law' and [2] that the defendants deprived [it] of this property interest without constitutionally adequate process." *García-Rubiera v. Fortuño*, 665 F.3d 261, 270 (1st Cir. 2011) (quoting *SFW Arecibo, Ltd. v. Rodríguez*, 415 F.3d 135, 139 (1st Cir. 2005)). This latter prong is satisfied by the plausible allegations in the Amended Complaint that the Defendants have provided no process at all.

With respect to the first prong, the Court finds that M&N has properly alleged a protected property interest in the disputed attorney's fees. The parties do not dispute that a private attorney may have an interest in the attorney's fees she generates by working on a Social Security case. ECF No. 24 at 25; ECF No. 26 at 12. Furthermore, the contracts between M&N and its associates, and between M&N and its clients, create contractual entitlements to fees. M&N's plausible allegations that the Defendants have interfered with this property interest are sufficient to state a claim to a procedural due process violation. *See Nat'l R.R. Passenger Corp. v. Atchison, Topeka & Santa Fe Ry. Co.*, 470 U.S. 451, 476–77 (1985) (government can

8

"'adjus[t] the burdens and benefits of economic life,' as long as it d[oes] so in a manner that [is] neither arbitrary nor irrational" (first alteration in original) (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729 (1984))).

Accordingly, the motion to dismiss as to Count V is DENIED.

### 2. Count VI: Substantive Due Process

Count VI alleges that the Defendants have violated M&N's substantive due process rights by regulating attorney's fees and payments thereof in an irrational manner. To allege a substantive due process claim, a plaintiff need not allege the violation of a protected liberty interest. *Cook v. Gates*, 528 F.3d 42, 48 n.3 (1st Cir. 2008). In such cases, "challenges are reviewed under the rational basis standard." *Id.* Government action has a rational basis where it is "rationally related to a legitimate governmental interest." *Id.* (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)). "The government, however, cannot pursue its interest(s) in an arbitrary manner." *Vaqueria Tres Monjitas, Inc. v. Laboy*, No. 04-1840 (DRD), 2007 WL 7733665, at *26 (D.P.R. July 13, 2007).

The Court concludes that a rational finder of fact could conclude that SSA's actions were arbitrary and/or irrational. Among the plausible facts a factfinder could find irrational are: that SSA recognizes law firms for tax purposes but not for attorneys' fees; that law firms are not recognized for administrative-level fees but are recognized for federal court fees; that, under one method of payment, fees are split by the number of attorneys on the case and not the amount of work done; that attorneys

9

who leave M&N to work for SSA are not paid[4]; and that other, non-M&N firms have been paid for work done by attorneys who have left those firms and joined SSA. While SSA points out that it has authority to "regulate who may receive direct payment of fees," it does not have the ability to do so arbitrarily or irrationally.[5]

Accordingly, the motion to dismiss as to Count VI is DENIED.

### 3. Count VII: Equal Protection

M&N alleges two types of equal protection claims. The first claim is that SSA has singled out M&N as a "class of one." A "class of one" equal protection claim is cognizable when a plaintiff alleges that it has been intentionally treated differently from others similarly situated, and that there is no rational basis for the difference in treatment. *SBT Holdings, LLC v. Town of Westminster*, 547 F.3d 28, 34 (1st Cir. 2008); *see Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013) (comparators must have an "extremely high degree of similarity" (quoting *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007))).

M&N has pled sufficient factual allegations to state a "class of one" equal protection claim: that SSA treated it differently from similarly situated law firms

---

[4] SSA argues 18 U.S.C. § 203 makes it a crime for these attorneys to be paid for their already-accumulated fees, and thus, that the statute offers a rational basis for denying payment to attorneys now in the employ of the government. This puts the cart before the horse. If the Defendants recognized law firms, these fees would be paid to the firms, not individual attorneys, and no conduct arguably within the scope of § 203 would occur. SSA cannot rely on a scenario that only arises under their allegedly unconstitutional framework to justify the validity of that scheme.

[5] Similarly, the Court rejects Defendants' argument that M&N's representational contracts with clients are necessarily invalid because SSA does not allow firms to represent clients. If SSA's rules are invalid, then the contracts are not "validly prohibited." *See Hines v. Lowrey*, 305 U.S. 85, 90 (1938).

without a rational basis. *See* ECF No. 19 ¶¶ 100–17. M&N alleges two other law firms in the same area of practice, employing associate attorneys in the same manner, whose associates similarly left to work for SSA, never experienced the difficulties in getting paid for their associates' work that M&N has. These allegations, and the reasonable inferences drawn therefrom—including that Defendants acted in bad faith, *see* ECF No. 19 at 2 (describing "net effect of these irrational rules is to discourage law firms from practicing in the field of Social Security disability law")—suffice to state a "class of one" claim.

The second equal protection claim is premised on Defendants' alleged discrimination against M&N based on its status as a law firm as compared to SSA's treatment of individual attorneys. A court will uphold differential treatment if there is a "rational relationship between the disparate treatment and a legitimate government objective." *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 145 (1st Cir. 2001). A complaint must plead plausible allegations of the absence of any rational basis for the difference in treatment. *D'Ambra v. City of Providence ex rel. Lombardi*, No. 11-600-M, 2013 WL 690605, at *1 (D.R.I. Feb. 25, 2013); *see Wojcik v. Mass. State Lottery Comm'n*, 300 F.3d 92, 104 (1st Cir. 2002) ("An equal protection claim will only succeed if the decision to treat an individual differently than those similarly situated is wholly 'arbitrary or irrational.'" (quoting *Me. Cent. R.R. Co. v. Bhd. of Maintenance of Way Emps.*, 813 F.2d 484, 492 (1st Cir. 1987))).

As the Court described briefly above in section III.C.2, the Amended Complaint alleges sufficiently actions by SSA that lack a rational basis. *See also* ECF No. 19 ¶¶

41–62. And the Rhode Island Supreme Court allows both individual attorneys and entities such as M&N to engage in the practice of law. *See* R.I. Sup. Ct. Rs. 3, 10. The allegations and the reasonable inferences drawn therefrom plausibly allege the lack of a rational basis for SSA's differential treatment of M&N as a law firm as compared to individual attorneys.

Accordingly, the motion to dismiss as to Count VII is DENIED.

D. Counts VIII and IX: Administrative Procedure Act ("APA") claims

Count VIII alleges that certain SSA rules and regulations are arbitrary and capricious as applied to law firms; Count XI alleges that certain SSA rules on attorney's fees are invalid because they were not promulgated under notice and comment rulemaking. SSA presents two arguments that, if successful, would bar review of these claims. The Court addresses each.

1. 42 U.S.C. § 405(h) does not bar review.

Defendants first argue that 42 U.S.C. § 405(h) bars review of M&N's APA claims. *See* 5 U.S.C. § 701(a)(1) (allowing APA review unless "statutes preclude judicial review"). SSA argues that 42 U.S.C. § 405(h) precludes APA review because it states that:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

This statute, by its own words, precludes jurisdiction over an action seeking review of fee determinations in individual cases. *See Weisbrod v. Sullivan*, 875 F.2d 526, 527 n.2 (5th Cir. 1989) (noting that, although "the fee amounts fixed by the Secretary . . . are not subject to judicial review," "the regulation itself" remained open to such a challenge); *see also Schweiker v. Gray Panthers*, 453 U.S. 34, 44 (1981) (allowing challenge to SSA Medicaid regulations under APA). M&N's APA claims do not challenge the fee decisions rendered by SSA in an individual case in which it was party to a hearing; rather, it challenges SSA's allegedly arbitrary and capricious action in refusing to recognize law firms, in distinguishing between attorneys that work in different firms versus the same firm, and in considering when attorneys are providing "work."

Accordingly, the jurisdictional bar in § 405(h) does not apply to M&N's APA claims.

### 2. 5 U.S.C. § 701(a)(2) precludes review.

Defendants next argue that 5 U.S.C. § 701(a)(2) bars application of the APA to M&N's claims. That provision states that the APA does not apply where "agency action is committed to agency discretion by law." The Supreme Court has recognized this as "a very narrow exception" that applies in the "rare instances" where statutes are so broad "there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (quoting S. Rep. No. 752, 79th Cong., 1st Sess., 26 (1945)). Determining whether § 701(a)(2) applies "requires careful examination of the statute on which the claim of agency illegality is based." *Webster v. Doe*, 486 U.S. 592, 600 (1988).

The Supreme Court has recognized that "Congress conferred on the [agency] exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act." *Gray Panthers*, 453 U.S. at 43 (referencing a different section of the Act); *see Weisbrod*, 875 F.2d at 528 (noting the "delegation of authority . . . in section 206(a) is as great as that contained in the provision at issue in *Gray Panthers*"). Indeed, § 206(a) grants the Commissioner broad discretion to "prescribe rules and regulations governing the recognition of agents or other persons . . . representing claimants before the Commissioner of Social Security." 5 U.S.C. § 406(a). The language of § 206(a) suggests that its implementation was committed to agency discretion by law. *See McCarthy v. Sec'y of Health & Human Servs.*, 793 F.2d 741, 742 (6th Cir. 1986) (interpreting § 206(a) as "committing to the Secretary's discretion the setting of legal fees for administrative representation of Title II social security claimants"); *Copaken v. Sec'y of Health, Educ. & Welfare*, 590 F.2d 729, 731 (8th Cir. 1979) (per curiam) (SSA's "discretionary authority is so broad and exclusive that fee determination has been held to be an action committed to agency discretion within the meaning of Section 701(a)(2) of the [APA] and therefore not judicially reviewable"); *see also Webster*, 486 U.S. at 598–601 (arbitrary and capricious review is not "law to apply").

Because of the breadth of discretion afforded to SSA—and because M&N does not substantially address the argument that § 701(a)(2) precludes review, *see generally* ECF No. 24—the Court holds that § 701(a)(2) precludes M&N's claims

14

under the APA. Accordingly, then, the motion to dismiss as to Counts VIII and IX must be GRANTED.[6]

IV. CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED as to Counts I, II, III, IV, VIII, and IX. The motion is DENIED as to Counts V, VI, and VII.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

July 9, 2018

---

[6] This holding does not preclude M&N's constitutional claims. *See Webster*, 486 U.S. at 603 (allowing constitutional claims to proceed despite holding that § 701(a)(2) precluded APA claims).