UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| MARASCO & NESSELBUSH, LLP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TARA COLLINS, in her official capacity | ) | |
| as Supervisory Attorney of the Office of | ) | |
| Disability Adjudication and Review; | ) | C.A. No. 17-317-JJM-LDA |
| CAROLYN TEDINO, in her official | ) | |
| capacity as Regional Management Officer | ) | |
| for Boston Social Security Administration; | ) | |
| SOCIAL SECURITY ADMINISTRATION, | ) | |
| by and through ANDREW SAUL,[1] in his | ) | |
| official capacity as Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief United States District Judge.

Marasco & Nesselbush, LLP ("M&N") sues the Social Security Administration and employees Tara Collins and Carolyn Tedino, each in their official capacity (collectively, the "SSA"), alleging that the SSA has violated M&N's constitutional rights through its arbitrary and irrational conduct regarding the payment of attorney's fees in Social Security disability cases. M&N moves for summary judgment on Counts V, VI, and VII of its First Amended Complaint. ECF No. 43. The SSA opposes M&N's motion for summary judgment and files its own motion for summary judgment. ECF No. 45.

---

[1] Andrew Saul, as the current Commissioner of the Social Security Administration, is automatically substituted as a party under Fed. R. Civ. P. 25(d).

## I. BACKGROUND & FACTS

Three counts remain from M&N's First Amended Complaint—Counts V, VI, and VII—each alleging a constitutional violation for which M&N is seeking declaratory judgment. ECF No. 19 at 43-48, ¶¶152-76. The Court will briefly review the facts relevant to these motions.

M&N, a Rhode Island law firm[2] practicing Social Security disability law, employs salaried associate attorneys. ECF No. 44 at 1, ¶¶1, 5-6. Pursuant to the terms of their employment, M&N's associates have no right to the attorney's fees that the SSA pays them, and their salaries do not depend on the amount of fees generated by the disability cases they represent. *Id.* at 2, ¶¶6-7. To effectuate this, each M&N associate must sign a Limited Power of Attorney (the "Power of Attorney") that acknowledges that any attorney's fees are M&N's property. *Id.* at 3, ¶¶15-17. The Power of Attorney states, in relevant part:

> I acknowledge that I am a salaried employee of Marasco & Nesselbush, and I warrant that I do not represent any Social Security clients outside of the employ of Marasco & Nesselbush. In the event of my separation from the law firm of Marasco & Nesselbush, I hereby waive payment of any attorney fees relative to any disability claim in which I entered an Appointment of Representative form (1696) while employed by Marasco & Nesselbush through the date of separation. I acknowledge that any and all fees owed to me by the SSA are, in fact, the property of Marasco & Nesselbush.

*Id.* at ¶16.

---

[2] M&N is a limited liability partnership. The Rhode Island Supreme Court allows entities such as M&N to practice law in Rhode Island. *See* R.I. Sup. Ct. R. 10.

The SSA has full regulatory control over representation in Social Security disability cases and the payment of fees to a representative. *See* 20 C.F.R. §§ 404.1700-404.1799. Under its regulations, the SSA provides that only a "representative" may charge and collect attorney's fees. *Id.* § 404.1703, 404.1720. Consistent with the statutory grant provided to the SSA, a "representative" may be an attorney or a non-attorney. *See* 42 U.S.C. §406(a); 20 C.F.R. § 404.1703. A representative is defined as "an attorney . . . or a person other than an attorney . . . whom [the claimant] appoint[s] to represent [him or her] in dealings with [SSA]." 20 C.F.R. § 404.1703. As noted in the SSA's internal operating instructions, "only individual persons may be appointed and act as representatives before SSA," and "an entity such as a firm, partnership, legal corporation, or other organization is not an individual person; therefore, the claimant may not appoint an entity to act as his or her representative." Program Operations Manual System ("POMS") General ("GN") 03910.020(B)(3).[3] The SSA may refuse to recognize the individual a claimant chooses to appoint as representative if the person does not meet the requirements set out in its regulations. 20 C.F.R. § 404.1705(c). Once appointed, a representative, on behalf of the claimant, may obtain information about the claim, submit evidence, make statements about the claim, and make requests regarding the proceedings. *Id.* §404.1710(a). The representative will also receive from the SSA notices, copies of administrative actions, determinations or decisions, and requests for information or

---

[3] POMS is the "primary source of information used by Social Security employees to process claims for Social Security benefits" and is available at https://secure.ssa.gov/poms.nsf/home!readform.

evidence. *Id.* § 404.1715. The SSA allows a claimant to appoint several representatives. POMS GN 03910.040(D). The SSA requires representatives from the same firm who are working on the same case to sign a single fee agreement. Hearings, Appeals, and Litigation Law Manual ("HALLEX") I-1-2-3(B).[4] If a representative does not sign the fee agreement, the SSA will treat the representative as having waived his or her right to charge and collect a fee. *Id.*

Because law firms are not recognized as "representatives" under the SSA's rules and thus may not charge or collect fees, attorney fee payments are made only to individual attorneys. *See* 20 C.F.R. § 404.1720. Individual attorneys can only collect fees if the SSA approves of the fee and an unauthorized fee collection can lead to criminal prosecution under 42 U.S.C. § 406(a)(5). Additionally, the attorney can lose his or her right to practice before the SSA under 20 C.F.R. §§ 404.1740(c)(2) and 404.1745(b), (c).

The SSA provides two alternative processes for attorneys to seek authorizations of attorney's fees—(i) the fee agreement process and (ii) the fee petition process. POMS GN 03920.001. Under the fee agreement process, the representative may file a fee agreement with the SSA before the SSA decides the claim. *Id.* Such fee agreement may not provide for a fee greater than 25% of the past-due benefits awarded to the claimant, and the fee may not be more than the statutory maximum, currently $6,000. POMS GN 03940.003(B)(3). Under the fee petition

---

[4] HALLEX specifies the "procedures for carrying out [the SSA's] policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1 ("Purpose").

process, the representative petitions for a fee after the representation has ended, submitting a fee petition, time records, and a description of the work performed on behalf of the claimant. POMS GN 03930.020. The SSA reviews the fee petition and supporting materials and, at its discretion, may authorizes a fee. 20 C.F.R. § 404.1725. Upon authorization of a fee, the SSA deposits the authorized fee into a bank account in the name of the individual representative. POMS GN 03920.017(C). To facilitate this payment, M&N establishes joint bank accounts with each of its associates. ECF No. 44 at 4, ¶ 19. After the SSA deposits the fees generated by M&N's associates into these accounts, M&N transfers the fees into its own operating account pursuant to the Power of Attorney. *Id.* at ¶ 20. If an associate leaves M&N and withdraws the Power of Attorney, M&N cannot submit a fee petition in that associate's name or transfer the fees from that associate's account under the threat of criminal prosecution. *Id.* at 6-7, ¶¶ 37-40. In such scenario, M&N must contact the former associate to obtain the appropriate authorization. *Id.*

Under the SSA rules, attorneys who leave a law firm to work for the government must waive any fees not authorized before their government employment. *See* ECF No. 44 at 7-8, ¶¶ 54-55; ECF No. 19-9 at 2-4. This means that any fee request filed, but not adjudicated, before an attorney's government employment will not be paid. ECF No. 19-9 at 2-4. M&N experienced this when three of its associate attorneys—Joseph Wilson, Paul Dorsey, and Kyle Posey—left to work for the SSA. ECF No. 44 at 6-7, 10-14, ¶¶ 41-53, 65-83. Messrs. Wilson, Dorsey, and Posey needed to withdraw and waive all attorney's fees in cases before the SSA

pending as of their employment with the SSA. *Id.* at 7-8, ¶¶ 54-55. Following these withdrawals, M&N sought payment for work performed by these individuals but was denied. ECF No. 43 at 15. In denying these fee requests, the SSA informed M&N that, unless the fee was authorized before its former associates' government service, the SSA could not authorize the collection of the waived fees. ECF No. 44 at 10, ¶ 64. M&N experienced similar denials after two additional associates, Jennifer Belanger and Valerie Diaz, were both hired by the SSA in July 2018. ECF No. 44 at 14-17, ¶¶ 84-86, 92-102.

M&N has submitted testimony from attorneys at two other Rhode Island law firms, Green & Greenberg and the Law Office of Attorney Richard Bruce Feinstein, stating that the SSA has paid attorney's fees under circumstances similar to what M&N experienced. *Id.* at 17-18, ¶¶ 104, 108; ECF Nos. 44-16, 44-17. Like M&N, these firms employ salaried associates to work on Social Security disability cases, some of whom left and entered government service. ECF No. 44 at 17-18, ¶¶ 105, 109-111. But, unlike M&N, these attorneys claim to have had no difficulty receiving payment from the SSA for work performed by such associates prior to their government employment. *Id.* at ¶¶ 106-107, 112.

## II. STANDARD OF REVIEW

When ruling on a motion for summary judgment, the court must look to the record and view all the facts and inferences therefrom in the light most favorable to the nonmoving party. *Continental Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Once this is done, Fed. R. Civ. P. 56(c) requires that summary

judgment be granted if there is no issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Id.* The parties have both filed motions for summary judgment, but "[t]he presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review." *Mandel v. Boston Phoenix, Inc.*, 456 F.3d 198, 205 (1st Cir. 2006). In evaluating cross-motions, the court must determine whether either party is entitled to judgment as a matter of law based on the undisputed facts. *Scottsdale Ins. Co. v. Torres*, 561 F.3d 74, 77 (1st Cir. 2009).

## III. DISCUSSION

In its motion for summary judgment, M&N argues that the SSA has violated its constitutional right to procedural due process (Count V), substantive due process (Count VI), and equal protection (Count VII). ECF No. 43 at 21-34.

In opposition to M&N's motion for summary judgment and in support of its cross-motion, the SSA asserts three main arguments. First, according to the SSA, M&N never had a property interest in the fees it claims it was denied and therefore, consistent with the general principle of constitutional avoidance, the Court should resolve this dispute without analyzing the constitutional questions. ECF No. 45 at 9. Second, the SSA claims that M&N has not presented enough evidence to support cognizable equal protection and due process constitutional challenges. *Id.* at 14-30. And third, the SSA argues that it can articulate plausible rational bases for the challenged regulations, which cannot be negated by M&N as required to succeed on a rational-basis review. *Id.* at 30-48.

A.    Constitutional Avoidance

According to the SSA, the Court can properly grant its cross-motion for summary judgment on all three remaining counts as a matter of contract interpretation, which would relieve the Court from having to decide M&N's constitutional challenges. ECF No. 45 at 10. The SSA's argument is based on the assertion that M&N never had a property interest in the fees it claims it was denied because M&N cannot obtain fees properly waived by the individuals who performed the services meriting those fees. *Id.* at 12-13. The SSA contends that the Power of Attorney that M&N required its associates to sign when they began their employment, establishes M&N's property interest in fees generated by the associates that are "owed" to the associates by the SSA. *Id.* The SSA's argument continues that because a fee is not owed to a representative, unless it has first been authorized by the SSA, the Power of Attorney does not convey a property interest in any fee not yet approved and authorized by the SSA when the attorney who generated that fee ended his or her employment with M&N. *Id.* The SSA argues that M&N has failed to establish that any of the fees in the cases it identifies were approved and authorized prior to the attorney leaving M&N. *Id.* at 13. And when the attorneys left M&N, the SSA asserts that those attorneys waived their interest in any fee. *Id.*

The SSA also argues that even if it approved an attorney's fee after a former attorney ended employment with M&N, that fee was not "owed" because the attorney waived payment of the fee upon leaving M&N. *Id.* That waiver would be effective on the attorney's separation from M&N, preventing the attorney from undertaking any efforts to collect the fee. *Id.* Consequently, the SSA argues that while the Power of

Attorney purports to give M&N the authority to perform any actions the former attorney "might or could do personally," it conveys no right at all with respect to waived fees. *Id.*

M&N challenges the SSA's constitutional avoidance argument with several points. First, in making this argument, M&N contends that the SSA ignores the fact that M&N's claims are viable based on events that occurred before its associates left, including having to maintain joint bank accounts with every one of its associates, causing administrative and tax burdens. ECF No. 53 at 2. Additionally, M&N argues that the SSA is misinterpreting the substance of its Power of Attorney, which is between M&N and its departing associate to ensure that the departing associate will not attempt to keep attorney's fees for cases worked on while employed at M&N. *Id.* at 2-3. Moreover, M&N argues that because only constitutional claims remain and there is no breach of contract claim, there exists no other ground to decide these motions. *Id.* at 3. Finally, M&N challenges the SSA's argument as circular, noting that the only reason it cannot collect fees on behalf of its associates is due to the SSA's practice of not recognizing law firms when authorizing attorney's fees. *Id.* at 3-4.

While the Court must follow the "well-established principle governing the prudent exercise of th[e] Court's jurisdiction" that prevents the Court from deciding a constitutional question "if there is some other ground upon which to dispose of the case," it finds no other grounds on which to dispose the remaining claims of this case. *Northwest Austin Mun. Utility Dist. No. One v. Holder,* 557 U.S. 193, 205 (2009) (citing *Escambia Cty. v. McMillan,* 466 U.S. 48, 51, 104 (1984) (per curiam)). Unlike

the cases that the SSA cites, which contained alternative grounds for resolution, the remaining claims in this case are based solely on constitutional violations. *See Vaqueria Tres Monjitas, Inc. v. Pagan*, 748 F.3d 21, 26 (1st Cir. 2014); *ACLU v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013). If the Court was to follow the SSA's suggestion by deciding this case through interpretation of the Power of Attorney, the Court would be transforming M&N's properly presented constitutional questions to questions of contract interpretation. Further, interpretation of the Power of Attorney would leave unresolved whether the SSA's practice of not recognizing law firms when authorizing attorney's fees, which has caused M&N to enter the Power of Attorney with its associates, is constitutional. Thus, finding it "absolutely necessary" for resolving the current motions, the Court will analyze each of the alleged constitutional violations in turn. *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936).

## B.    Count V: Procedural Due Process

In Count V, M&N seeks declaratory relief for procedural due process violations after being denied any mechanism or procedure to challenge the SSA's refusal to pay it attorney's fees. ECF No. 19 at ¶¶ 152-59.

To establish a procedural due process claim, a plaintiff must demonstrate "[1] 'a property interest as defined by state law' and [2] that the defendants deprived [it] of this property interest without constitutionally adequate process." *García-Rubiera v. Fortuño*, 665 F.3d 261, 270 (1st Cir. 2011) (citing *SFW Arecibo, Ltd. v. Rodríguez*, 415 F.3d 135, 139 (1st Cir. 2005)). M&N argues it is entitled to summary judgment on this claim because it has a protectable property interest in attorney's fees

generated by its associates and the SSA deprived M&N of that property interest without any process. ECF No. 43 at 33.

The SSA counters that M&N's procedural due process claim fails because, as a matter of law, M&N, as a law firm, cannot have a property interest in attorney's fees authorized under Section 206(a) of the Social Security Act. ECF No. 45 at 14, 24. The SSA contends that even if M&N did have such an interest, that interest would depend on the SSA's exercise of its discretion and thus would not be a "legitimate claim of entitlement" protected by procedural due process. *Id.* at 27 (citing *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005)). In making this argument, the SSA notes that procedural due process does not protect everything that might be described a "benefit." *Id.*

The Court agrees with the SSA in finding that M&N's procedural due process claim fails because M&N does not have a property interest in representative attorney's fees authorized by the SSA. Section 206(a) of the Social Security Act states that only representatives may receive fees for representation before the SSA and provides the SSA with the authority to "prescribe rules and regulations governing the recognition of agents or other persons, other than attorneys...." 42 U.S.C. § 406(a)(1). While Congress mandated the SSA to recognize attorneys as representatives, it granted the SSA the authority to define what "other persons" it would also recognize. *See id.* The SSA could have chosen to recognize entities, such as law firms, but it instead promulgated regulations providing that only an individual may be appointed as a representative by defining "representative" as "an *attorney* who meets all of the

requirements of § 404.1705(a), or a *person* other than an attorney who meets all of the requirements of § 404.1705(b)." 20 C.F.R. § 404.1703 (emphasis added). As argued by the SSA and found by other courts, the regulations contemplate representation by an "[a]ttorney" or a "person" who is "not an attorney," without including representation by an "entity," which is defined separately and includes partnerships such as M&N. *See People with Disabilities Found. v. Berryhill*, No. 15-CV-02570-HSG, 2017 WL 1398275, at *4 (N.D. Cal. Apr. 19, 2017) (citing 20 C.F.R. § 404.1705(c)); *see also* 20 C.F.R. § 404.1705(a)-(c). In choosing not to recognize entities like M&N as representatives, the SSA has made a reasonable choice within the statutory grant of its authority and, as such, the Court will not disturb that choice. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 845 (1984); *see also Guadamuz v. Bowen,* 859 F.2d 762, 768 (9th Cir. 1988) ("Where the administrative choice represents a reasonable accommodation of conflicting policies that were committed to the agency's care by statute, it should not be disturbed unless it appears in the statute or its legislative history that the accommodation is not one Congress would have sanctioned.").

M&N attempts to negate this interpretation by arguing that to find a property interest, it does not matter that the SSA does not allow law firms to represent claimants because property interests can be created in other ways, including through private contracts such as those between M&N and its associates and clients. ECF No. 53 at 9. The flaw in this argument is that any contract governing the payment of representative fees is conditioned on the statutory requirements of Section 206(a)

of the Social Security Act, which sets forth that an attorney may be entitled to a reasonable fee only as determined by the SSA. *See* 42 U.S.C. § 406; *see also Culbertson v. Berryhill*, 139 S. Ct. 517, 520 (2019) ("If the claimant obtains a favorable agency determination, the Agency may allot 'a reasonable fee to compensate such attorney for the services performed by him.'"); *see also Siler v. Heckler*, 583 F. Supp. 1110, 1112 (N.D. Ga. Apr. 26, 1984) (citing *Pepe v. Schweiker*, 565 F. Supp. 97 (E. D. Pa. June 13, 1983)). In determining whether a fee is reasonable, the SSA has broad discretion and may deny the payment of a fee to a representative. *See* 42 U.S.C. § 406. For example, a fee request may be rejected based on an agreement providing for a fee more than the statutory limit. *See* 42 U.S.C. § 406(a)(2); POMS GN 03940.003.B.3. The SSA may also deny a fee request if it determines that a representative provided incompetent representation. 20 C.F.R. §§ 404.1725(b)(1)(iii). When "government officials may grant or deny [a benefit] in their discretion," the benefit is not a protected entitlement. *Town of Castle Rock,* 545 U.S. at 756 (citing *Ky. Dept. of Corr. v. Thomas*, 490 U.S. 454, 462–63 (1989)). Without a legitimate claim of entitlement, a violation of procedural due process cannot be established as there must be more than a "unilateral expectation" of a property interest. *See id.; see also Kapps v. Wing,* 404 F.3d 105, 115-16 (2d Cir. 2005) ("[w]hether a benefit invests the applicant with a 'claim of entitlement' or merely a 'unilateral expectation' is determined by the amount of discretion the disbursing agency retains. . . .") (citing *Colson ex rel. Colson v. Sillman*, 35 F.3d 106, 107 (2d Cir. 1994)). Because the grant of attorney's fees depends on the SSA's exercise of its discretion, neither M&N nor its

former associates can show a "legitimate claim of entitlement" to such fees that is sufficient enough to establish a property interest for a procedural due process claim. *See Town of Castle Rock,* 545 U.S. at 756. Without such property interest, summary judgment on this count must be granted in favor of the SSA.

### C. Count VI: Substantive Due Process

In Count VI, M&N argues that the SSA's regulations violate its substantive due process rights. ECF No. 19 at ¶¶160-65. Noting that the SSA recognizes law firms for tax reporting purposes, distributes payments to attorneys differently depending on whether they work at the same firm, different firms, or as sole practitioners, and authorizes fees to law firms for Social Security disability work in federal courts, M&N contends that the SSA regulations are "arbitrary and irrational." ECF No. 43 at 29, 31.

In response to M&N's assertions, the SSA argues that Congress delegated it "broad authority" to regulate the recognition of representatives and the disbursement of fees and argues that its regulations are reasonably and rationally related to that mandate. ECF No. 45 at 37. It states that its primary rationale for its regulatory scheme of recognizing individuals rather than law firms is to enable the SSA to "ensure quality, protect the rights of claimants, and ensure that claimants have the information they need to make sound decisions with respect to their benefits." *Id.* Allowing entities to represent claimants, according to the SSA, would create concerns related to "effective claimant representation, representative conduct and accountability, privacy, and efficiency." *Id.* at 36. But by recognizing only individuals as representatives, the SSA claims to be able to more efficiently conduct business

14

with representatives and monitor representatives' compliance with its regulations. *Id.* at 32-33. That is because once a claimant's appointment of a representative is recognized, the SSA conducts business directly with that representative, including sending notices and disclosing confidential information about the claimant. *Id.* To conduct this business, the SSA must be able to apply all its rules to the representative in an efficient and effective manner, including its disclosure rules for access to confidential claimant information and third-party disclosure rules, designed to ensure that a representative does not disclose confidential claimant information to unauthorized individuals, as well as its representative sanction rules, intended to ensure representatives obey the SSA's standards of practice. *Id.* Working directly with an individual, according to the SSA, allows it to monitor compliance with these rules and address violations, as necessary, more efficiently than if it needed to recognize an entity that can dissolve, reorganize, or attempt to shift responsibilities to individuals, such as administrative staff, who could evade the SSA's sanctions. *Id.* at 33.

While protecting claimants against representation by unscrupulous or inattentive entities is important, the SSA claims that it is also concerned with protecting itself against claimants who would seek to appeal an unfavorable decision by claiming they did not knowingly appoint the representative who appeared at their hearing. *Id.* at 35. The SSA argues that by requiring claimants to knowingly appoint a specific individual to represent them, as opposed to an entity, guards the SSA

against later claims by the claimant that they were represented by an unknown or unqualified representative. *Id.*

As the Court noted in its previous Order (ECF No. 32 at 9), a plaintiff need not show a violation of a protected liberty interest to establish a substantive due process claim. *See Cook v. Gates*, 528 F.3d 42, 48 n.3 (1st Cir. 2008). In such cases, "challenges are reviewed under the rational basis standard." *Id.* Government action has a rational basis where it is "rationally related to a legitimate governmental interest." *Id.* (citing *Heller v. Doe ex rel. Doe*, 509 U.S. 312, 320 (1993)). "The government, however, cannot pursue its interest(s) in an arbitrary manner." *Vaqueria Tres Monjitas, Inc. v. Laboy*, No. 04-1840 (DRD), 2007 WL 7733665, at *26 (D.P.R. July 13, 2007). But "[r]emedial choices made by the appropriate legislative or regulatory body are invested with a strong presumption of validity," and are rebuttable only if "'there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals.'" *Medeiros v. Vincent*, 431 F.3d 25, 29 (1st Cir. 2005) (citing *Wine and Spirits Retailers, Inc. v. R.I.*, 418 F.3d 36, 54 (1st Cir.2005)), *abrogated on other grounds by Bond v. United States*, 564 U.S. 211 (2011). Although the assumptions underlying a proffered rational may be erroneous, "the very fact that they are 'arguable' is sufficient, on rational-basis review, to 'immunize' the [regulatory] choice from constitutional challenge." *Heller*, 509 U.S. at 333 (citing *F.C.C. v. Beach Comm., Inc.*, 508 U.S. 307, 320 (1993)). The choice of a regulator within its statutory grant of authority "is not subject to courtroom fact-finding and may be based on rational

speculation unsupported by evidence or empirical data." *See Beach Comm.*, 508 U.S. at 315 (citing *Vance v. Bradley*, 440 U.S. 93, 111).

The Court finds that M&N has not met the "daunting burden of demonstrating" that the SSA's regulations for the disbursement of representative fees has no conceivable rational basis. *Medeiros*, 431 F.3d at 31. M&N has neither submitted evidence, nor raised a dispute of material fact, that challenges the SSA's rational basis for its regulatory regime in serving administrative efficiency, protecting claimants' rights, and providing for easier oversight of representatives for compliance with the SSA's rules and regulations. ECF No. 45 at 36-37. In response to this proffered rational, M&N argues that monitoring law firms for compliance with the SSA rules regarding representations would be no more difficult than tracking individual attorneys. ECF No. 50 at 7-8. In making this argument, M&N notes that law firms are also required to be licensed like individual attorneys and thus could be supervised and sanctioned and that the SSA already tracks law firms for tax reporting purposes. ECF No. 50 at 7-8. The test of rationality, however, is not whether an alternative method would be more difficult but whether "there exists no fairly conceivable set of facts that could ground a rational relationship between the challenged classification and the government's legitimate goals." *Medeiros*, 431 F.3d at 29. Thus, although the SSA may not have chosen "the best means to accomplish" its purpose, that does not mean its regulation has no rational basis. *Mass. Bd. of Retirement v. Murgia,* 427 U.S. 307, 316 (1976) ("[T]he State perhaps has not chosen the best means to accomplish this purpose. But where rationality is the test, a State

'does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect'" (citing *Dandridge v. Williams,* 397 U.S. 471, 485 (1970))); *see also Medeiros,* 431 F.3d at 31 ("Once a rational basis is identified, [courts] must uphold the statute or regulation even in cases when there is no empirical data in the record to support the assumptions underlying the chosen remedy."). That other means are available and may be better suited to the achievement of the SSA's goals— for example, recognizing law firms as opposed to individuals—is not relevant under rational basis review. *See Vance,* 440 U.S. at 103, n. 20; *see also Donahue v. City of Bos.,* 371 F.3d 7, 15 (1st Cir. 2004) (noting that facts that could provide a rational basis need not be supported by the record, and any "'plausible' justification will suffice"), *cert. denied,* 543 U.S. 987 (2004).

While M&N is correct to note that summary judgment should not be entered if there is a dispute of material fact over whether the SSA has a rational basis for its actions, the Court disagrees that such a dispute exists. ECF No. 50 at 3 (citing *Koynok v. Lloyd,* 405 F. App'x 679, 682 (3d Cir. 2011)); *see also Perfect Puppy, Inc. v. City of E. Providence,* 98 F. Supp. 3d 408, 414 (D.R.I. Mar. 31, 2015), *aff'd in part, appeal dismissed in part,* 807 F.3d 415 (1st Cir. 2015). To establish a dispute of material fact, the record must contain evidence that creates a conflict requiring resolution by a jury as was the case in *Dias v. City and County of Denver.* No. 07-CV-00722-WDM-MJW, 2010 WL 3873004, at *7 (D. Colo. Sept. 29, 2010). In *Dias,* the court found that conflicting expert testimony regarding "the current state of the science" created a genuine issue of fact that precluded summary judgment on whether

there existed a rational basis for a breed specific dog ordinance in Denver. *Id.* Unlike the plaintiff in *Dias*, however, M&N has not submitted evidence that creates such a conflict. Its attempt to create an issue of material fact relies on the opinions of attorneys who lack personal knowledge of the SSA system, specifically the administration of its disclosure and representative sanctions rules, and examples in which the SSA recognizes law firms in contexts not requiring the same need for administrative efficiency and representative monitoring. *Walters v. Nat'l Ass'n of Radiation Survivors*, 473 U.S. 305, 324, n.11 (1985) (finding that anecdotal evidence of dealings with a massive benefits system "is simply not the sort of evidence that will permit a conclusion that the entire system is operated contrary to its governing regulations"). This evidence is not enough to subject the SSA's regulations to "court-room fact-finding." *See Beach Comm.*, 508 U.S. at 315. Summary judgment on this count therefore must be granted in favor of the SSA.

### D. Count VII: Equal Protection

In Count VII, M&N alleges two types of equal protection violations. M&N's first violation alleges that the SSA singled it out as a "class of one." ECF No. 19 at ¶¶170-71. The second alleged violation is premised on the SSA discriminating against M&N based on its status as a law firm in comparison to the SSA's treatment of individual attorneys. *Id.* at ¶¶168-69.

#### 1. "Class of One"

M&N argues that the SSA has singled it out as a "class of one" by treating it differently than at least two similarly situated law firms, Green & Greenberg and the Law Office of Richard Feinstein. ECF No. 43 at 25. According to M&N, these firms,

which also practice Social Security disability law in Rhode Island, have had associates leave the firm to begin employment at the SSA before the SSA authorized or paid attorney's fees in their names for several cases. ECF No. 44 at 17-18, ¶¶ 105-07, 110-12. But, unlike M&N, attorneys from these law firms claim they received authorization and payment from the SSA for attorney's fees in the individual names of their associates after the associates left to work for the SSA. ECF No. 43 at 25-26; ECF Nos. 44-16, 44-17.

In response, the SSA argues that M&N cannot maintain a "class of one" equal protection claim because it has not presented evidence demonstrating that the SSA acted in bad faith or with a malicious intent to injure M&N by not authorizing it to collect fees in certain cases. ECF No. 45 at 15 (citing *Tapalian v. Tusino*, 377 F.3d 1, 6 (1st Cir. 2004). In support of its argument, the SSA points to other courts stating that "class of one" claims should be rare and "not be used to 'transform every ordinary misstep by a local official into a violation of the federal Constitution.'" *Id.* (citing *Middleborough Veterans' Outreach Ctr., Inc. v. Provencher*, 502 Fed. App'x 8, 11 (1st Cir. 2013)). M&N responds to this argument by noting that the "First Circuit precedent on the requirement of bad faith for a class of one claim is very unsettled, including in this District." ECF No. 53 at 7. Alternatively, M&N argues that the record contains evidence that supports an inference that the SSA, acting in bad faith, applied its rules and regulations regarding attorney's fees to M&N to discourage M&N from practicing Social Security disability law as a law firm. ECF No. 53 at 7. The SSA challenges this assertion by noting that the evidence M&N submitted—

affidavit testimony stating that the two other law firms received fees paid in the individual names of their departed associates—does not support an inference of bad faith because it does not show that the other law firms' former associates "waived their fees or correctly withdrew from representation." ECF No. 45 at 16-17. According to the SSA, several plausible rational explanations are possible for why any payment may have been made to these other law firms, including administrative error. *Id.* at 17-20.

In a "class of one" equal protection claim, a plaintiff must show that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Freeman v. Town of Hudson*, 714 F.3d 29, 38 (1st Cir. 2013). In claims such as M&N's, "the plaintiff ordinarily must also show that the defendant's differential treatment of the plaintiff was motivated by 'bad faith or malicious intent to injure. . . .'" *Snyder v. Gaudet*, 756 F.3d 30, 34 (1st Cir. 2014) (citing *Rubinovitz v. Rogato*, 60 F.3d 906, 911 (1st Cir.1995)). This bad faith element is concerned with the government actor's "intent to injure," not with the result of the government's action. *See Priolo v. Town of Kingston, Mass.*, 839 F. Supp. 2d 454, 462 (D. Mass. Mar. 20, 2012). Thus, to survive a motion for summary judgment, an "inference of ill-will or improper motive 'must flow rationally from the underlying facts. . . .'" *Buchanan ex rel. Estate of Buchanan v. Maine*, 417 F. Supp. 2d 24, 38 (D. Mass. Feb. 16, 2006) (citing *Rubinovitz*, 60 F.3d at 911).

The Court finds that M&N has not presented evidence showing that any differential treatment of M&N was motivated by bad faith or a malicious intent to injure. Nor does any inference of bad faith "flow rationally" from the facts in the record. *Buchanan*, 417 F. Supp. 2d at 38. While M&N contends that the two other law firms received payments in the individual names of attorneys who left their employment for government service, the fact that fees paid were in the individual names of the other law firms' departed associates does not prove bad faith or malice on the SSA's part. As the SSA notes, the other law firms' former associates may not have waived their fees or correctly withdrew from representation before joining the SSA, or the payment of such fees may have been done in error. ECF No. 45 at 16-17. Further, because the bad faith element is concerned with the government actor's "intent to injure" as opposed to the results of such action, M&N's assertion that the SSA's actions could discourage it from practicing Social Security disability law is not enough to establish bad faith or malice. *See Priolo*, 839 F. Supp. 2d at 462. The Court therefore finds that there is not enough evidence to infer bad faith and that summary judgment should be entered in favor of the SSA. *See Snyder*, 756 F.3d at 34.

## 2. Discrimination Based on Status as a Law Firm

The second equal protection claim M&N asserts is premised on the SSA's alleged discrimination against M&N based on its status as a law firm. ECF No. 43 at 21. M&N contends that the SSA has discriminated against M&N by permitting individual attorneys, but not law firms, to represent Social Security disability claimants and to receive attorney's fees in such cases. ECF No. 43 at 21-22. Such differential treatment is impermissible, according to M&N, because there is no

rational relationship between the disparate treatment and a legitimate government objective. *Id.* (citing *Starlight Sugar, Inc. v. Soto*, 253 F.3d 137, 145 (1st Cir. 2001)).

The SSA counters this claim by noting that the different treatment of law firms and individuals under its regulation is rationally related to legitimate government interests. ECF No. 45 at 30. And, on rational basis review, a regulation "bear[s] a strong presumption of validity." *Id.* (citing *Beach Comm.*, 508 U.S. at 314). The SSA argues that it is M&N's "burden to demonstrate that the regulations are irrational" and to meet that burden, M&N must "negate every conceivable basis which might support it." *Id.* (citing *Heller*, 509 U.S. at 320; *Beach Comm.*, 508 U.S. at 315).

M&N contends that it can challenge the existence of a rational basis for a regulation on summary judgment and, if a dispute of material fact exists, then that should preclude summary judgment in favor of the SSA. ECF No. 50 at 3.

Like its substantive due process challenge, M&N has the burden to demonstrate that the regulations are irrational for this equal protection challenge. *Medeiros*, 431 F.3d at 32–33 (citing *Enters. v. Chater*, 110 F.3d 150, 159 (1st Cir. 1997) ("[A] court must apply substantially the same [rational basis] analysis to both substantive due process and equal protection challenges.")) To meet that burden, M&N must negate every conceivable basis which might support it. *Id.* (citing *Abdullah v. Comm'r*, 84 F.3d 18, 20 (1st Cir. 1996); *Beach Comm.*, 508 U.S. at 315)). As discussed, M&N has proffered no evidence, nor has it raised a dispute of material fact, that challenges the SSA's rational basis for its regulatory regime in serving administrative efficiency, protecting claimants' rights, and providing for easier

oversight of representatives for compliance with the SSA's rules and regulations. Summary judgment on this count therefore must be granted in favor of the SSA.

## IV. CONCLUSION

For the reasons stated, the Court DENIES M&N's Motion for Summary Judgment on Counts V, VI, and VII of its First Amended Complaint (ECF No. 43) and GRANTS the SSA's Motion for Summary Judgment. ECF No. 45.

IT IS SO ORDERED.

John J. McConnell, Jr.
Chief Judge
United States District Court

March 12, 2020